UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROSA PADILLA PAZ,

     Petitioner,

  v.

JULIO HERNANDEZ, et al.,

     Respondent.

CASE NO. 2:26-cv-01394-BAT

**ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER**

Petitioner Rosa Padilla Paz, by counsel, filed a 28 U.S.C. § 2241 petition for writ of habeas corpus which has been served, and a motion for temporary restraining order (TRO) seeking immediate release. Dkts. 1, 2, 3, 6. The Respondents have filed a response opposing the TRO, Petitioner has filed a reply, and the matter is ripe for review. Dkts. 10, 12.

## BACKGROUND

Petitioner first entered the United States as a teenager from Honduras in 2004. *See* Dkt. 3-5 at 6 (Decl. of Petitioner). Petitioner asserts she was fleeing severe violence in Honduras. *Id.* The current record shows Petitioner suffered severe domestic violence and human trafficking for a decade as a teen and young woman. *See* Dkt. 3-5 at 6-9 (Decl. of Petitioner), 24 (Decl. of Jennifer Stephanie Bonilla), 65-67 (Decl. of Rubi Guzman), 71-74 (Decl. of Hilda Castellanos), 79 (Decl. of Fareedah McCoy), 84 (Decl. of Katheryne Dubon), 88 (letter from Jacobo Padilla);

ORDER GRANTING MOTION FOR TEMPORARY
RESTRAINING ORDER - 1

Dkt. 3-12 at 24-28 (T visa I-914 Supplement B); Dkt. 3-18 at 192-196 (U visa I-918 Supplement B).

The current record shows that, during this period, through strangulation, rape, and death threats against Petitioner and her family, her abuser (Noe) forced Petitioner to assist him in selling drugs. *See* Dkt. 3-5 at 6-9. Petitioner was convicted in 2010 of one count of transportation of a controlled substance under Cal. Health and Safety Code § 11352 and in 2014 of one count of accessory after the fact to a felony under Cal. Pen. Code § 32. But the convictions were subsequently vacated as legally invalid under California Penal Code § 236.15 because the California State Court found they occurred as a direct result of Petitioner being a victim of intimate partner violence or sexual violence. *See* Dkt. 3-6 at 7-11 (vacatur of 2010 conviction under Cal. Pen. Code § 236.15); Dkt. 3-8 at 37 (vacatur of 2014 conviction under Cal. Pen. Code § 236.15).

The current record shows that in 2010, Petitioner came into contact with U.S. immigration officials twice, resulting in her detention and removal. *See* Dkt. 3-7 at 4-5. Petitioner states she followed Noe's instructions to say she was from Mexico, even though she was not and as a result was removed twice to Mexico. Dkt. 3-5 at 12-13. Once in Mexico, Petitioner states Noe made the arrangements to have her brought back into the United States and delivered to him. *Id.*

The current record shows Petitioner escaped her abuser (Noe) in 2014, and has since raised her three U.S. citizen children, ages 11, 15, and 20, as a single mother. Dkt. 3-5 at 6-9, 18-21, 28. The current record shows since 2014, Petitioner has had no further law enforcement contact and has lived in San Francisco, caring for her children, volunteering at their school and in the community, working, and paying taxes. *See* Dkt. 3-18 at 147; Dkt. 3-6 at 2-30 (criminal

ORDER GRANTING MOTION FOR TEMPORARY
RESTRAINING ORDER - 2

history chart); Dkt. 3-7 at 4-6 (2025 I-213 summary of criminal history); Dkt. 3-5 at 9-10, 28-32, 39-40, 97, 99-100, 114- 24 (Tax Returns), Dkt. 3-18 at 251 (letter of support from family liaison at daughters' elementary school), 254-55 (letter of support from outreach coordinator & community liaison at local community center), 257-66 (letters of support from other community members).

Petitioner was detained and taken into custody by ICE on June 2, 2025. The record reflects Petitioner was served with a Notice to Appear ("NTA") charging her as removable under INA 212(a)(6)(A)(i) (8 U.S.C. § 1182(a)(6)(A)(i)) in that she was a noncitizen "present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." *See Corrales Castillo v. Wamsley*, 2:25-cv-02172-TMC, Dkt. 3-8 (W.D. Wash.). Petitioner was placed in removal proceedings. *Id.*

In October 2025, after vacating two of her three convictions which had subjected her to mandatory detention, Petitioner requested and was granted a bond hearing before the Immigration Judge. *See* Dkt. 3-2 (Decl. of Hayley Upshaw) at ¶ 16. In October 2025, Petitioner appeared before Immigration Judge (IJ) John Odell for a bond hearing. *Id.* ¶ 17. Petitioner's bond hearing was initially scheduled for October 8, 2025. *Id.* ¶ 17. Petitioner filed evidence in support of her release on bond including certified criminal court records including the vacaturs from two of her criminal convictions; declarations from DV and trafficking experts; letters from family and friends who had direct knowledge of the abuse she suffered in the past by her abuser and changes they had witnessed since Petitioner escaped the abusive relationship; letters from her daughters' schools and community organizations that had interacted with Petitioner over the years; birth certificates for her children; her own tax returns and those of her daughter Jennifer and co-sponsor Joc Wilson; her lease for the fixed address where she had lived prior to detention

ORDER GRANTING MOTION FOR TEMPORARY
RESTRAINING ORDER - 3

and would live upon release; and letters from her daughters' therapists and her child's psychologist regarding the deleterious impact Petitioner's detention was having on them. *See generally* Dkt. 3-3, 3-4, 3-5, (psychological evaluation), (expert declaration of DV expert) (evidence in support of bond), (criminal history chart including vacatur orders).

At the hearing, the IJ stated he required the police reports for the drug related arrests be filed as well and set the bond hearing over to October 21, 2025. *See* Dkt. 3-2 ¶ 19. Petitioner subsequently filed the reports, along with a vacatur order of her last remaining conviction. She also included a declaration from a former San Francisco Police Commission board member from 2010 through 2014 (the two years that Petitioner sustained drug-related arrests) stating she was not aware of any policies or protocols at that time to screen individuals with drug related arrests to determine if they were DV or trafficking survivors. *See* Dkt. 3-8 at 5-31 (Police Reports), 33-34 (Declaration of Angela Chan), 36 (vacatur order).

On October 10, 2025, an Immigration Judge denied Petitioner's applications for asylum and related protections and ordered Petitioner removed to Honduras. Dkt. 3-9 at 4. Petitioner has appealed that order, and it remains pending before the BIA. Dkt. 3-2 ¶ 25.

DHS counsel submitted records of Petitioner's vacated 2010 conviction, multiple forms I-213 from her 2010 and 2025 immigration arrests, and a copy of the IJ order denying her applications for asylum and related protections, which had been issued after a hearing on October 10, 2025, and for which she was in the process of filing a timely appeal. *See* Dkt. 3-2 ¶ 18, 22; Dkt. 3-7 (DHS filing); Dkt. 3-9 (DHS additional filing).

At the bond hearing on October 21, 2025, the immigration judge denied bond, finding he lacked jurisdiction and in the alternative, he would deny bond because he believed Petitioner was a danger and a flight risk. *See* Dkt. 3-2 ¶ 23; Dkt. 3-10 (Bond Minute Order).

ORDER GRANTING MOTION FOR TEMPORARY
RESTRAINING ORDER - 4

After filing T and U visa applications, Petitioner sought a new bond hearing. Dkt. 3-2 ¶ 33; *see generally* Dkt. 3-17 (Motion for Bond Hearing Based on Changed Circumstances); Dkt. 3-18 (New Bond Evidence). That request was still pending when her nephew, Jacobo, for whom she had also previously been the legal guardian, died earlier this month.  *See* Dkt. 3-22 (Office of the Chief Medical Examiner, San Francisco, verification of death letter); *See* Dkt. 3-5 at 88 (letter of nephew Jacobo Padilla); Dkt. 3-21 (Guardianship Order). Petitioner supplemented the pending request for a new bond hearing with this evidence. Dkt. 3-2 ¶¶ 34-35. The immigration judge denied the request for a new bond hearing, citing DOJ Executive Office for Immigration Review ("EOIR") policy that she is subject to mandatory detention under § 1225 and finding no changed circumstances. *See* Dkt. 3-20.

The record shows that since Petitioner was detained in June 2025, her 20-year-old daughter Jennifer has cared for her two younger siblings while also attending college and working. *See* Ex. 4 at 30. Earlier this month, Petitioner's nephew Jacobo—who had been helping care for and providing support for her children over the past 10 months —died unexpectedly. *See* Ex. V (Office of the Chief Medical Examiner, San Francisco, verification of death letter); *See* Ex. A ¶¶ 19-22. Petitioner had obtained legal guardianship of Jacobo when he was a child and raised him as a son. *See* Dkt. 3-5 at 88 (letter of nephew Jacobo Padilla); Ex. U (Guardianship Order). Petitioner asserts she is now needed to inter Jacobo's body and arrange for his funeral as his next of kin. Dkt. 3-1 ¶ 23.

## DISCUSSION

**A.     Petitioner's Claims are not Barred by the Abuse of the Writ Doctrine**

Respondents contend Petitioner's habeas petition is barred by the abuse of writ doctrine. *See* Response to TRO, Dkt. 10 at 5. The abuse of the writ doctrine "generally forbids the

ORDER GRANTING MOTION FOR TEMPORARY
RESTRAINING ORDER - 5

reconsideration of claims that were or could have been raised in a prior habeas petition." *Alaimalo v. United States*, 645 F.3d 1042, 1049 (9th Cir. 2011) (citation modified). In a previous habeas action, Petitioner challenged the IJ's finding he lacked jurisdiction to consider Petitioner's release on bond, under *Rodriguez Vazquez v. Hermosillo*, No. 3:25-cv-05240 (W.D. Wash.), in a group habeas action with the assistance of class counsel. *See Corrales Castillo v. Wamsley*, No. 2:25-cv-02172-TMC, 2025 WL 3204370, at *2–3 (W.D. Wash. Nov. 17, 2025). Petitioner raises new challenges in this habeas action that could not have been raised in her previous habeas action. *See Vasquez Lopez v. Hernandez*, No. C26-0775 TSZ, 2026 WL 984151, at *1 n.4 (W.D. Wash. Apr. 13, 2026); *K.G.M.Q. v. Bondi*, No. 2:26-CV-00506-TL, 2026 WL 962609, at *4 (W.D. Wash. Apr. 9, 2026) ("[T]he petition now before the Court raises distinct issues from the petition previously denied" in a *Rodriguez Vazquez* enforcement habeas case).

The Court accordingly finds the present habeas petition is not barred by the abuse of the writ doctrine.

**B.      Exhaustion of Administrative Remedies**

Respondents suggest the Court should deny the TRO because petitioner has not sought "administrative relief" and argues Petitioner therefore does not face immediate or irreparable harm. Dkt. 10 at 2. Whether Petitioner must avail herself of all administrative remedies, i.e., exhaust her remedies in the habeas context, "is a prudential rather than jurisdictional requirement." *Singh v. Holder*, 638 F.3d 1196, 1203 n.3 (9th Cir. 2011). "Courts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow

ORDER GRANTING MOTION FOR TEMPORARY
RESTRAINING ORDER - 6

the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (internal quotation marks omitted).

Nevertheless, even if these factors weigh in favor of requiring exhaustion, "there are a number of exceptions to the general rule requiring exhaustion, covering situations such as where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004).

The Court finds pursuit of administrative remedies would be a futile gesture, as it is Respondents' position under its recent EOIR policy that Petitioner is subject to mandatory detention under § 1225. The Court accordingly finds the petition is not barred for lack of exhaustion of administrative remedies.

**C.     TRO Legal Standards**

Respondents oppose petitioner's motion for a TRO arguing the Court's General Order 10-25 reserves TRO motions only to requests involving imminent, irreparable harm, and Petitioner's TRO motion does not meet this standard, and because Petitioner fails to meet the requirements necessary to obtain a TRO.

As to Respondents' first contention, General Order 10-25 states "motions for temporary restraining orders should be reserved for matters whether the petitioner alleges imminent, irreparable harm." The general order requires the Court to consider TRO motions on an individual basis, as it overlaps with the standards required to grant a TRO. Obviously, in some cases the facts support denial of a TRO motion while in other cases, the facts support granting the motion. The Court finds that under the circumstances of this case in which the parties sharply disagree whether Petitioner's situation involves imminent, irreparable harm, that General Order

10-25, itself, is not grounds to deny the motion.

Turning to Respondents' contention the Court should deny the motion because petitioner is unlikely to succeed on the merits, a TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008). TROs apply the same standard applicable to preliminary injunctions. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting preliminary injunction and temporary restraining order standards are "substantially identical").

Thus, to obtain a TRO, Petitioner must show she is (1) likely to succeed on the merits, (2) likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in her favor, and (4) an injunction is in the public interest. *Stormans, Inc. v. Selecky,* 586 F.3d 1109, 1127 (9th Cir. 2009). A TRO is "never awarded as of right," and the Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 22.

The Ninth Circuit applies a "sliding scale" approach to preliminary relief, where "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiffs can support issuance of a preliminary injunction, so long as the plaintiffs also show that there is a likelihood of irreparable injury, and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Under this approach, "a stronger showing of one *Winter* factor [will] offset a weaker showing of another." *Planned Parenthood Great Nw., Haw., Alaska, Ind., Ky. v. Labrador*, 122 F.4th 825, 843–44 (9th Cir. 2024).

**1. Petitioner is Likely to Succeed on the Merits**

Petitioner argues the IJ abused his discretion and committed legal error in (1) denying

ORDER GRANTING MOTION FOR TEMPORARY
RESTRAINING ORDER - 8

Petitioner's original October 2025 bond hearing, and (2) denying Petitioner's motion for a changed circumstances bond hearing on April 22, 2026. Dkt. 2 at 7. Petitioner is likely to succeed on the merits of her claim.

The Court generally lacks jurisdiction to review discretionary bond decisions. Under 8 U.S.C. § 1226(e), "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."

However, § 1226(e) does not bar "habeas jurisdiction over constitutional claims or questions of law." *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017) (quoting *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011)); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1209 (9th Cir. 2022) ("Although the [immigration judge's] discretionary bond determination was not reviewable in federal court. . ., we would have had jurisdiction under 28 U.S.C. § 2241 to consider any error of law in [a noncitizen's] agency proceedings, including any claimed due process violation."). Thus, "a district court has jurisdiction to review an [immigration judge's] discretionary bond denial where that bond denial is challenged as legally erroneous or unconstitutional." *Kharis v. Sessions*, Case No. 18-cv-04800-JST, 2018 WL 5809432 *4 (N.D. Cal. Nov. 6, 2018) (collecting cases).

This Court's habeas review of the immigration court's determination as to dangerousness and flight risk is for abuse of discretion. *See Martinez v. Clark,* 124 F.4th 775, 779, 784-85 (9th Cir. 2024). Under an abuse of discretion standard, the court cannot reweigh evidence; the Court can determine only whether the correct legal standard was applied. *Id.* at 785 (citing *Konou v. Holder*, 750 F.3d 1120 (9th Cir. 2014)).

ORDER GRANTING MOTION FOR TEMPORARY
RESTRAINING ORDER - 9

Petitioner argues the IJ's conclusion she is both a danger and a flight risk violates both the Immigration and Nationality Act ("INA") and the Due Process Clause because the IJ abused his discretion in reaching this conclusion. The Court thus finds it has subject matter jurisdiction over Petitioner's claims.

The Court also finds Petitioner has shown she is likely to succeed on her claim the IJ abused his discretion in finding Petitioner was a danger to the community and a flight risk. "When determining whether a noncitizen is a danger to the community or risk of flight, an IJ weighs nine factors, pursuant to BIA precedent." *K.G.M.Q. v. Bondi*, No. 2:26-CV-00506-TL, 2026 WL 962609, at *11 (W.D. Wash. Apr. 9, 2026) (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006) and *Martinez*, 124 F.4th at 783). The factors the IJ "may" consider "include any or all of the following;"

> (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen]'s length of residence in the United States; (3) the [noncitizen]'s family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen]'s employment history; (5) the [noncitizen]'s record of appearance in court; (6) the [noncitizen]'s criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen]'s history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen]'s manner of entry to the United States.

*Martinez*, 124 F.4th at 783 (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). "The *Guerra* factor most pertinent to assessing dangerousness is the [noncitizen]'s criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses." *Id*. (citation modified). These factors "grant an IJ broad discretion to weigh the listed factors and add any factors not mentioned or discount those that are less probative." *Id*. at 783–84.

The current record before the Court shows the IJ failed to "correctly appl[y] the statutory standard to a given set of facts." *See Martinez*, 124 F.4th at 783.

ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER - 10

In petitioner's case, with respect to danger to the community, the IJ found:

> While Respondent's criminal convictions have been vacated on technical grounds, the record clearly establishes that Respondent has engaged in the distribution of rock cocaine in San Francis[c]o on at least 4 occasions between 2010 and 2014. Respondent claims that she was compelled to engage in these drug trafficking activities because of pressure from an abusive and controlling partner. In the court's view, these circumstances do not sufficiently mitigate the dangerousness of Respondent repeated drug trafficking activities. … Respondent is a danger to the community.

Dkt. 3-11.

Petitioner's evidence shows her convictions for drug related offenses were vacated not "on technical grounds" but were vacated specifically pursuant to California Penal Code § 236.15 which provides in relevant part:

> (a) If a person was arrested for or convicted of any nonviolent offense committed while the person was a victim of intimate partner violence or sexual violence, the person may petition the court for vacatur relief of their convictions, arrests, and adjudications under this section. *The petitioner shall establish, by clear and convincing evidence, that the arrest or conviction was the direct result of being a victim of intimate partner violence or sexual violence that demonstrates that the person lacked the requisite intent to commit the offense. Upon this showing, the court shall find that the person lacked the requisite intent to commit the offense and shall therefore vacate the conviction as invalid due to legal defect at the time of the arrest or conviction.*

Cal. Penal Code § 236.15 (emphasis added).

Thus, in vacating the convictions, the State Court in California found Petitioner lacked the requisite intent to commit the offense because she committed the offenses as a direct result of being a victim of intimate partner violence, and the conviction was invalid due to legal defect at the time of the arrest or conviction. Under the circumstances, the IJ's determination of dangerousness, based on the explicitly invalidated convictions, was unsupported by evidence and an abuse of discretion.

Furthermore, the record does not show the IJ considered the "recency" (or more aptly, remoteness) of these offenses as he was required to do. *See Martinez*, 124 F.4th at 783 (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006) (in considering the noncitizen's criminal record as

ORDER GRANTING MOTION FOR TEMPORARY
RESTRAINING ORDER - 11

a factor, the IJ must consider "the [noncitizen]'s criminal record, *including the extensiveness of criminal activity, the recency of such activity*, and the seriousness of the offenses") (emphasis added); *Singh v. Holder*, 638 F.3d 1196, 1206 (9th Cir. 2011), *abrogated on other grounds as recognized by Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1202 (9th Cir. 2022) (an IJ "must" consider "the recency and severity of [an] offense[]," [as] "a [offense] could have occurred years ago, and the [noncitizen] could well have led an entirely law-abiding life since then.").

The current record before the Court shows Petitioner was convicted of these offenses twelve or more years ago, that she committed them because she was the victim of intimate partner violence, and since she has escaped that abusive relationship in 2014, she has led a law-abiding life. The record thus shows these offenses, for which the convictions were vacated, are "essentially ancient history." *See Vasquez Lopez v. Hernandez*, No. C26-0775 TSZ, 2026 WL 984151, at *3 (W.D. Wash. Apr. 13, 2026) ("Petitioner's misdemeanor conviction, for which she served no time in custody, is essentially ancient history, and the notion that petitioner could, given her health concerns, or would flee and/or poses some danger to the community is entirely unsupported by the evidence."). The IJ's finding of dangerousness is unsupported by evidence and an abuse of discretion *Id.*

Petitioner also shows she likely will succeed on her claim the IJ abused his discretion in finding Petitioner was a flight risk. In assessing flight risk, the IJ found:

> The court also finds that Respondent has failed to establish that she is not a flight risk. Respondent claims that she has been the victim of abuse and trafficking by a former partner. While she plans to file a T-visa with USCIS, nothing has yet been filed. Respondent has 3 United States citizen [children] (ages 20, 14, and 10), and they live in San Francisco. Respondent claims significant family and community ties. She has tried to help her neighbors. She has worked in the United States without authorization, and she has filed some income tax returns. Respondent has twice been removed to Mexico, despite being a citizen of Honduras. She claims that she was told by her abusive partner to claim Mexican citizenship when she was apprehended by immigration officers in the past. After each removal, she reentered the United States again illegally. Respondent has applied for asylum and protection in the United States. On October 10, 2025, she had a

ORDER GRANTING MOTION FOR TEMPORARY
RESTRAINING ORDER - 12

> merits hearing before an immigration judge. All of her applications were denied, and she was ordered removed to Honduras. Respondent has appealed that order of removal. Under the circumstances, the court finds that Respondent is an extremely poor bail risk. No amount of bail or condition of parole will ensure her presence at future hearings (or her surrender to immigration officers for removal if her appeals are not successful).

Dkt. 3-11.

The IJ failed to explain why departure from the United States to Mexico, which the IJ acknowledges Petitioner stated was at the direction of her abusive partner, and unauthorized re-entry into the United States twelve or more years ago demonstrates Petitioner is a risk of flight. *Soriano v. Hernandez*, No. 2:26-CV-00900-DGE, 2026 WL 969764, at *5 (W.D. Wash. Apr. 10, 2026) (Finding the IJ abused his discretion in finding flight risk in part where "[t]he IJ provides no explanation why an unauthorized reentry into the United States 25 years ago would motivate Petitioner to uproot his family from his community (or abandon his family) to avoid immigration officials and flee."). This is particularly so given the IJ's acknowledgement that Petitioner has three United States citizen children who are 20, 14, and 10 years old, and they live in San Francisco, claims significant family and community ties, has tried to help her neighbors, has worked in the United States without authorization, and has filed some income tax returns. *See id.*

The BIA directs an IJ "may consider the likelihood that relief from removal will be granted in determining whether an alien warrants a bond" based on the rationale that a noncitizen who likely faces inevitable removal may be less likely to appear at future removal hearings. *Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 805 (B.I.A. 2020). Here, the IJ states Petitioner's applications for relief were denied and she was ordered removed and she has appealed her removal order. But "[w]hile it might be rational to draw such conclusion based on the specific facts presented in a particular case, the IJ did not explain how the relative strengths or weaknesses of Petitioner's claims for relief outweighed the specific circumstances presented in this case." *Soriano*, 2026 WL 969764, at *5. The IJ noted Petitioner's significant family

ORDER GRANTING MOTION FOR TEMPORARY
RESTRAINING ORDER - 13

connections and roots in the San Francisco community but then "concluded without explanation that Petitioner's challenges in establishing relief automatically supported finding Petitioner a '[extremely] poor bail risk.'"" *Id.*

The IJ provided no rationale for the conclusion that, under Petitioner's circumstances, she would try to flee rather than appear in immigration court to pursue claims for relief from removal proceedings, even if such claims -- having been denied by an IJ and currently on appeal to the BIA -- might be considered weak for that reason. *Id.*

Accordingly, the Court finds Petitioner shows she is likely to succeed on her claim that the IJ abused his discretion in finding Petitioner was a danger to the community and a flight risk.

The Court also finds Petitioner is likely to succeed on the claim the IJ erred as a matter of law in deeming Petitioner is mandatorily detained under § 1225(b) and he therefore lacked jurisdiction to consider her for release on bond.

The current record shows Petitioner entered the United States many years ago without inspection, was not apprehended upon arrival, had lived in the country for many years prior to being detained in June 2025, and is not subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231. The Court finds petitioner has shown she is likely to succeed on her argument she is detained under 8 U.S.C. § 1226(a), and therefore the IJ did not lack jurisdiction to consider her for release on bond under 8 U.S.C. § 1226(a). *See Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297 (W.D. Wash. 2025).

**2. Petitioner Will Likely Suffer Irreparable Harm**

Petitioner is likely to suffer irreparable harm in the absence of preliminary injunctive relief. There is no dispute Petitioner's nephew, for whom she was also the legal guardian and who helped financially support her daughter, recently died unexpectedly, and Petitioner is

ORDER GRANTING MOTION FOR TEMPORARY
RESTRAINING ORDER - 14

needed to make arrangements with the medical examiner, secure release of the body and prepare his funeral. The Respondents mention Petitioner could have requested other forms of relief, but fails to explain the process for requesting such relief, or whether such relief might, in fact, be available to Petitioner when they also argue no relief is available because they contend she is mandatorily detained under § 1225.

The Court accordingly finds Petitioner is likely to suffer irreparable harm in the absence of preliminary injunctive relief.

### 3. Balance of the Equities and Public Interest Weigh Against Continued Detention

The final two *Winter* factors (balance of the equities and consideration of the public interest) merge when the Government is the party opposing the TRO. *See Nken v. Holder*, 556 U.S. 418, 435 (2009); *Padilla v. Immigr. & Customs Enf't*, 953 F.3d 1134, 1141 (9th Cir. 2020). These factors weigh in Petitioner's favor. "Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution." *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) (citing *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005)). And "while the public may have an interest in 'prompt execution of removal orders,' ([…]quoting *Nken*, 556 U.S. at 435), these interests do not outweigh the constitutional concerns raised by Petitioner." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1138 (W.D. Wash. 2025). Thus, the third and fourth *Winter* factors therefore weigh in favor of granting temporary injunctive relief.

Having considered the *Winter* factors, the Court finds Petitioner is likely to succeed on the merits of her due process claim; there is a high risk of being erroneously deprived of her freedom without injunctive relief; and Petitioner's interest in protecting her constitutional rights

ORDER GRANTING MOTION FOR TEMPORARY
RESTRAINING ORDER - 15

outweigh the Government's interest in her continued detention. The Court concludes the motion for TRO should be granted.

## CONCLUSION

For the reasons discussed above the Court ORDERS:

1. Petitioner's motion for TRO (Dkt. 2) is GRANTED.

2. Respondents shall release petitioner from immigration custody within 24 hours of the date and time of issuance of this order.

2. Respondents shall file a certification Petitioner has been released from immigration custody within 48 hours of the date and time this order was issued.

3. Respondents shall not re-detain Petitioner pending resolution of the petition for writ of habeas corpus without prior approval from this Court.

4. This Order granting petitioner's TRO will remain in place for 14 days, i.e. until May 13, 2026. Within that time period, Petitioner may, if appropriate, (1) file a motion for preliminary injunction to extend her release and bar redetention until such time as the Court issues final judgment on his habeas petition; and (2) request an extension of the TRO until such time as the Court issues a written order on the preliminary injunction. *See* Fed. R. Civ. P. 65(b)(2).

DATED this 29th day of April, 2026.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

ENTERED at 2:55 PM _____

ORDER GRANTING MOTION FOR TEMPORARY
RESTRAINING ORDER - 16